UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VALERIE VALDEZ,

        Plaintiff,                                  Hon. Ellen S. Carmody

v.

                                                   Case No. 1:11-cv-562

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/


## **OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. On November 5, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #9).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 26 years old on the date of the ALJ's decision. (Tr. 18, 125). She successfully completed high school and worked previously as a waitress and general laborer. (Tr. 151-52, 155, 169-76).

Plaintiff applied for benefits on May 3, 2006, alleging that she had been disabled since March 1, 2002, due to diabetes, panic attacks, and depression. (Tr. 125-30, 150). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 70-124). On February 3, 2010, Plaintiff appeared before ALJ Paul Jones, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 23-69). In a written decision dated April 14, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 10-18). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On March 30, 2006, Plaintiff participated in a diabetic retinopathy evaluation the results of which revealed "no diabetic retinopathy is found in either eye." (Tr. 294).

A July 26, 2007 activities report indicates that Plaintiff washes laundry, dusts, mops, washes dishes, shops for food and personal items, watches television, listens to the radio, works on her scrapbook, reads books, and cares for a friend's child. (Tr. 156-64). The same day, Plaintiff also completed a report regarding her activities. (Tr. 181-88). Plaintiff reported that on a daily basis she cares for her nephew, dusts, washes dishes, washes laundry, vacuums, mops, watches television, works on her scrapbook, and reads. (Tr. 181-88). Plaintiff also reported that she shops for food and clothes. (Tr. 184).

On August 15, 2007, Plaintiff participated in a consultive examination conducted by Dennis Mulder, Ed.D. (Tr. 298-302). Plaintiff reported that she was disabled due to her diabetes. (Tr. 298). Plaintiff reported that she was experiencing "blurred vision" and that she occasionally "will blackout and not know what she is doing." (Tr. 298). Plaintiff reported that she was depressed, but "does not know why." (Tr. 298). Plaintiff reported that she recently stopped working as a waitress, a position she had held "for nine months." (Tr. 299). Plaintiff also reported previous cocaine and marijuana use as well as previous "problems with" alcohol. (Tr. 299). Plaintiff reported that she watches television, vacuums, dusts, cooks, washes dishes, and washes laundry. (Tr. 299). The results of a mental status examination were unremarkable. (Tr. 300-01). Plaintiff was diagnosed with: (1) major depressive disorder, recurrent, moderate, (2) panic disorder without agoraphobia, (3) history of alcohol abuse in short term remission, and (4) history of drug abuse in remission. (Tr. 301). Plaintiff's GAF score was rated as 50 to 55.[1] (Tr. 302).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34. A GAF score of 51-55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." *Id.*

Community mental health therapy progress notes, dated September 7, 2007, indicate that Plaintiff "is taking medications as prescribed" and "has been doing better." (Tr. 329).

On September 4, 2008, Plaintiff began treating with Community Mental Health of Muskegon County. (Tr. 381-84). Plaintiff was diagnosed with panic disorder without agoraphobia, mood disorder, and borderline personality disorder. (Tr. 382). Plaintiff was prescribed Paxil and Klonopin. (Tr. 381). Treatment notes dated October 29, 2008, indicate that Plaintiff is "doing much better" and "her moods are much more stable." (Tr. 379). Plaintiff reported that "the fluctuation in her moods, ups and downs, have disappeared." (Tr. 379).

On November 11, 2008, Plaintiff completed a report regarding her activities. (Tr. 211-18). Plaintiff reported that she prepares meals, washes dishes, vacuums, washes laundry, reads, watches television, and works on her scrapbook. (Tr. 211-18).

Treatment notes dated January 5, 2009, indicate that since Plaintiff's medication regimen was recently modified she "is doing remarkably well." (Tr. 377).

Treatment notes dated December 15, 2009, indicate that Plaintiff "is doing well, except for her focus, concentration and attention." (Tr. 373). The doctor updated Plaintiff's diagnoses noting that Plaintiff was experiencing bipolar disorder, panic disorder without agoraphobia, and attention-deficit/hyperactivity disorder. (Tr. 373). Plaintiff's medication regimen was modified to reflect this modified diagnosis and her GAF score was rated as 58.[2] (Tr. 373).

On January 26, 2010, Plaintiff's treating psychiatrist, Dr. Zia Khan, authored a letter in response to a request from Plaintiff's attorney for assistance in helping Plaintiff obtain disability

---

[2] A GAF score of 58 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

5

benefits. (Tr. 362). The doctor responded that he "cannot be of any assistance in this matter" because Plaintiff "do[es] not suffer from a condition that would preclude her from joining the work force." (Tr. 362).

On February 12, 2010, Plaintiff's attorney questioned Dr. Noelle Franklyn in support of Plaintiff's application for disability benefits. (Tr. 434-50). The doctor testified that she treated Plaintiff for her diabetes, but did not treat her psychological or emotional problems. (Tr. 436-37). The doctor reported that Plaintiff's diabetes was not controlled and that as a result she was beginning to experience diabetes-related difficulties such as neuropathy and acidosis. (Tr. 440-42). Dr. Franklyn also acknowledged however, that Plaintiff does not take her diabetes medication as instructed. (Tr. 440-41). When asked to comment on the extent to which Plaintiff was physically limited as a result of her impairments, Dr. Franklyn stated, "I've never evaluated [Plaintiff] for this." (Tr. 444). Dr. Franklyn was nevertheless asked to comment on whether Plaintiff could or should work a full time job, to which the doctor responded as follows:

> Since I've never seen her hold a full time job while I've known her, it's difficult to know which problems that would arise. I'd be more concerned about her psychological issues. She has a lot of trouble with anxiety, panic attacks and depression. I'm more concerned that these would keep her from holding a job. Medically for diabetes, for better control, she'd certainly have an easier time but even this would interfere, would cause aches and pains, fatigue and possibilities of insulin reactions while at work. So I'm not optimistic about her holding a full time job.

(Tr. 447-48).

At the administrative hearing, Plaintiff testified that she was unable to work due to her uncontrolled diabetes which makes her "feel really tired all the time." (Tr. 38-40). Plaintiff also reported that she is "nauseous all the time" and "sometimes" gets dizzy. (Tr. 49). Plaintiff testified

that approximately six days each week she feels so badly that she cannot even get out of bed. (Tr. 49-51). With respect to her depression, Plaintiff testified that her medication and therapy has "been working" and that she feels "okay." (Tr. 51). Specifically, Plaintiff indicated that once she "started really keeping my appointments with my therapists and talking and trying to talk to other people instead of being angry all the time" her depression improved. (Tr. 51-52).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) depression; (2) panic disorder; and (3) borderline personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 12-15).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work at all exertional levels subject to the following limitations: (1) she is limited to the performance of one or two step tasks; (2) she can only work a low stress job with no more than frequent decision making and frequent changes in the work setting; and (3) she can have only frequent [sic] interaction with the public and co-workers. (Tr. 15).  The ALJ, based on testimony from a vocational expert, found that Plaintiff retained the ability to perform her past relevant work as a landscape laborer. (Tr. 17, 64-66).[4]  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

---

[4] The vocational expert further testified that there existed approximately 16,000 jobs in the state of Michigan which an individual could perform consistent with Plaintiff's residual functional capacity.  (Tr. 64-66).

      a.      The ALJ Properly Evaluated the Medical Evidence

As noted above, Dr. Franklyn expressed the opinion that she was not optimistic about Plaintiff's ability to perform a "full time job." Plaintiff asserts that because Dr. Franklyn was her treating physician, the ALJ was obligated to afford controlling weight to the doctor's opinion that she is incapable of working a full time job.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ

must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to his assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ considered Dr. Franklyn's deposition testimony in the context of evaluating whether Plaintiff's diabetes was a "severe" impairment. (Tr. 12). In this respect, the ALJ concluded that based upon the evidence as a whole, Plaintiff's diabetes was a "non-severe" impairment. (Tr. 12). Plaintiff has not challenged this determination. As for Dr. Franklyn's opinion that Plaintiff may experience difficulty performing full-time employment, the ALJ appropriately afforded such no weight.

First, the opinion that Plaintiff may experience difficulty working full-time does not constitute an opinion to which the ALJ must defer, as the question of whether Plaintiff is capable of working full-time is a matter reserved exclusively to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (determination of disability is a matter left to the commissioner). Moreover, while Dr. Franklyn opined that Plaintiff's greatest difficulties in performing work were related to her emotional problems, the doctor conceded that she does not even treat Plaintiff for such. Thus, with respect to Plaintiff's emotional problems, Dr. Franklyn is not properly considered a "treating

physician" and, therefore, her opinions regarding such are entitled to no deference or special consideration. Finally, while Dr. Franklyn may be considered a treating physician with respect to Plaintiff's physical impairments, the doctor expressly stated that she had "never evaluated" Plaintiff to determine the extent to which Plaintiff was limited by her physical impairments. Thus, any "opinion" the doctor might offer as to such is properly discounted. In sum, the Court discerns no error in the ALJ's evaluation of Dr. Franklyn's opinion. Accordingly, this argument is rejected.

        b.      The ALJ Improperly Discounted Plaintiff's Subjective Allegations

As noted above, Plaintiff testified at the administrative hearing that she was impaired to an extent far greater than that recognized by the ALJ. Plaintiff argues that the ALJ erred by failing to accord controlling weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

>  alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ discounted Plaintiff's subjective allegations as such were "not credible" to

the extent such were inconsistent with Plaintiff's RFC. (Tr. 15-16). The ALJ observed that while Plaintiff's emotional impairments "do reasonably limit her ability to perform basic mental work activities. . .they do not reasonably prevent her from working." (Tr. 16). As the ALJ further observed, "[t]he extremes of functional limitations which claimant has alleged result from her mental impairments do not correspond to the type and frequency of treatment she has sought and received for such impairments." (Tr. 16). The medical record detailed above reveals that Plaintiff is not limited to the extent alleged. Plaintiff acknowledged, and the record supports, that her impairments have responded well to conservative treatment such as counseling and medication. The ALJ's conclusion in this regard is supported by the opinion of Plaintiff's treating psychiatrist who concluded that Plaintiff "do[es] not suffer from a condition that would preclude her from joining the work force." In sum, the ALJ's decision to discount Plaintiff's subjective allegations is supported by substantial evidence. *See Norris v. Commissioner of Social Security*, 2012 WL 372986 at *4-5 (6th Cir., Feb. 7, 2012) (where the ALJ "did not misconstrue facts in the record or overlook other significant evidence. . .and identified specific facts supported by the record" which to "a reasonable mind" would "cast doubt on" a claimant's subjective allegations, the ALJ's decision to discount the claimant's credibility is not in error).

   c.  The ALJ Properly Relied on the Vocational Expert's Testimony

Finally, Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150

(6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that Plaintiff retained the ability to perform her past relevant work as a landscape laborer. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  August 29, 2012                                      /s/ Ellen S. Carmody
                                                           ELLEN S. CARMODY
                                                           United States Magistrate Judge